UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-23586-CIV-COOKE/GOODMAN

CERTAIN UNDERWRITERS
AT LLOYD'S OF LONDON
Plaintiff,
vs.
BLACK GOLD MARINE, INC.,
Defendant.
_____/
BLACK GOLD MARINE, INC.,
Defendant/Counter-Plaintiff,
vs.
CERTAIN UNDERWRITERS
AT LLOYD'S OF LONDON
Plaintiff/Counter-Defendant.
_____/
BLACK GOLD MARINE, INC., and Blake
Ducharme, individually
Third Party Plaintiffs,
vs.
MIDNIGHT EXPRESS POWER BOATS, INC.,
SEVEN MARINE, LLC, LATHAM
MARINE, INC.
Third Party Defendants.
_____/

## ORDER ON MOTIONS CHALLENGING EXPERT WITNESSES

"Without a deadline, baby, I wouldn't do nothing."

- Duke Ellington (musician and leader of his jazz orchestra, 1899 – 1974)

"The ultimate inspiration is the deadline."

- Nolan Bushnell (established Atari, Inc. and Chuck E. Cheese)

"Respect your deadline like it's a field marshal."

- Neeraj Agnihotri (author of PROCRASDEMON: THE ARTIST'S GUIDE TO LIBERATION FROM PROCRASTINATION (2019))

This Order addresses two motions challenging expert witnesses retained by Third Party Plaintiffs Black Gold Marine, Inc. and Blake Ducharme. Plaintiff Certain Underwriters at Lloyd's of London ("Underwriters") filed its Motion to Strike Rolando Santos and Orion Keifer as Expert Witnesses. [ECF No. 205]. Later the same day, Third-Party Defendant Seven Marine, LLC filed its *Daubert* Motion to Exclude Third-Party Plaintiffs Black Gold Marine, Inc. and Blake Ducharme's Experts Rolando Santos and Orion Keifer. [ECF No. 207].

Black Gold and Ducharme filed opposition responses [ECF Nos. 216, 217] and the two movants filed separate replies [ECF Nos. 223; 225]. United States District Judge Kathleen M. Williams, acting for United States District Judge Marcia G. Cooke, referred both motions to the Undersigned. [ECF No. 213].

The claims at issue in this lawsuit arise from Ducharme's operation (in the Cayman Islands) of a 43-foot open hull boat equipped with four outboard motors manufactured by Seven Marine. The boat capsized in the vicinity of Governor's Harbour Channel in the Cayman Islands.

For the reasons outlined in greater detail below, the Undersigned **grants** both motions. By way of summary, though, the Undersigned is excluding the two experts because (1) the deadlines to disclose them and their opinions have expired; (2) the deadlines have already been extended five times; (3) the Court specifically advised the

parties that the deadlines would not be extended again absent "extraordinary circumstances"; (4) Black Gold and Ducharme have not established extraordinary circumstances; and (5) the upcoming trial date makes it highly unlikely that the parties would be able to complete all the necessary additional steps required should the deadline be extended again.

In addition, Santos has provided only incomplete preliminary reports and never provided a deposition despite numerous requests to do so. Keifer, who was disclosed after the expert-disclosure deadline expired, has not provided any report of his opinions. His opinions and report (as well as Santos' final report) are awaiting a third inspection of the Vessel (specifically, its transom) and further testing -- neither of which has happened yet.

Underwriters, which is seeking to exclude Santos and Keifer as experts, concedes that its *own* metallurgist expert, Dennis McGarry, has not submitted an expert report either. Underwriters says it is prepared to try its position that the Vessel was unseaworthy when insured without McGarry. In other words, McGarry himself would also be prevented from providing expert opinion testimony about the Vessel's seaworthiness. The Undersigned views this as a litigant following the folksy principle that what's good for the goose is good for the gander. The Undersigned will adopt the goose/gander rule here and also exclude McGarry (along with excluding Santos and Keifer).

**Factual Background**

3

The Complaint [ECF No. 1] and Second Amended Third Party Complaint [ECF No. 116] are the operative pleadings for the allegations asserted among the parties.

The Complaint, filed by Underwriters, is for declaratory relief against Black Gold Marine, Inc., and it explains that the case involves a high-performance, 43-foot boat (equipped with four outboard engines of 627 horsepower each, manufactured by Seven Marine), capable of reaching speeds of approximately 90 mph. Underwriters issued a policy and renewal policy on the Vessel. It alleges that the insured omitted, misrepresented and or concealed several material facts, rendering the renewal policy void *ab initio*. Therefore, Underwriters says, there is no coverage for the loss.

The Complaint asserts two counts: breach of contract and *uberrimae fidei*, a marine insurance doctrine imposing the duty of utmost good faith (and requiring the insured to fully and voluntarily disclose to the insurer all facts material to a calculation of insurance risk). The Court denied both Underwriters' summary judgment motion under the *uberrimae fidei* doctrine [ECF No. 170] and later denied its motion for leave to rebrief the summary judgment motion on the doctrine [ECF No. 222].

Black Gold Marine, Inc., Ducharme and Black Gold Marine 2, Inc. filed a Second Amended Third Party Complaint against Seven Marine (the manufacturer of the boat's engines), Midnight Express Power Boats, Inc. (the Vessel's manufacturer) and Latham Marine, Inc. (the manufacturer of the Vessel's steering mechanism). [ECF No. 116]. This pleading also named Alliance Marine Risk Managers (Black Gold's insurance broker) as

a Third Party Defendant, but the Court previously dismissed Alliance, finding that Black Gold's claim against it was not ripe. [ECF No. 108].

According to the Second Amended Third Party Complaint, Ducharme is a resident and citizen of Canada who owns a handful of companies, including Black Gold Investments and Black Gold Marine, Inc. On October 21, 2016, Black Gold Investments entered into a purchase agreement with Midnight Express for the production and sale of a 43-foot-long power boat. Ducharme signed this purchase agreement on behalf of his company, Black Gold Investments. After production, the Vessel was delivered in Fort Lauderdale to Black Gold Marine.

The Vessel, which was designed, built, and manufactured by Midnight Express, was equipped with engines manufactured by Seven Marine and steering components manufactured by Latham Marine. Black Gold Investments paid $1,031,119.00 after a discount of $265,409.74 was deducted from the original price.

On May 3, 2019, approximately two years after the Vessel was built, Ducharme took a few guests on a cruise with the Vessel in the Cayman Islands. Despite favorable ocean conditions, the Vessel experienced issues with its engine and motor, flipped over completely, and threw Ducharme and all the passengers aboard into the ocean. Ducharme needed and received medical attention for the injuries he suffered during the accident. The Vessel sank but was eventually salvaged and towed a few hours after the accident.

The Court held a hearing on May 24, 2021 [ECF No. 155] on a Joint Motion to Dismiss [ECF No. 138] the Second Amended Third Party Complaint [ECF No. 116]. The Court [ECF No. 154] granted, in part, the motion, and dismissed Counts 5, 6, 7, 8, 9, 10 and 11, and also dismissed Black Gold Marine, Inc. 2 from this action. This ruling left intact Counts 1, 2, 3, 4, 12, 13 and 14.

The remaining claims are for myriad breach of warranty counts against Midnight Express and Seven Marine, and two types of products liability counts (for design defect and manufacturing defect) against Midnight Express, Seven Marine and Latham Marine.

**The Challenges to Black Gold's Experts, Santos and Keifer**

Seven Marine's Motion (and the Relevant Contentions)

Seven Marine's *Daubert* Motion to Exclude the Experts Retained by Black Gold and Ducharme (Santos and Keifer) is based on its contention that Santos provided only two preliminary reports which are devoid of final conclusions and that Black Gold/Ducharme did not disclose Keifer as an expert witness until after the disclosure deadline expired (and that he still has not provided a report). [ECF No. 207].

As outlined by Seven Marine, the Court's final Trial Scheduling Order [ECF No. 197] required Defendants to furnish their expert disclosures (with the required summaries/reports) by April 22, 2022. *Id.* Black Gold and Ducharme disclosed three experts on that day: Santos and two others. *Id.*

Moreover, the Scheduling Order required all expert discovery to be completed by

June 24, 2022, though it allowed the parties to continue discovery beyond that deadline by agreement. [ECF No. 197].

The parties held two inspections in the Cayman Islands (in March and May 2022) and agreed to a third inspection of the Vessel in late August 2022. But, as explained in the motion, there is no agreement to allow additional experts to be disclosed. Despite this absence of an agreement, the Third Party Plaintiffs served a Supplemental Expert Witness Disclosure on July 1, 2022 – which identifies an "entirely **new expert witness** with a **new area of expertise**: Orion P. Keifer, P.E., a metallurgist." [ECF No. 207, p. 2] (emphasis added).

Furthermore, Seven Marine describes Santos' two preliminary reports as being, in effect, a mere list of observations which are accompanied with caveats such as: "Based on our observations, we can preliminarily state the following . . ." or "[t]his was a preliminary inspection with no disassembly or removals." [ECF No. 207, p. 6]. Moreover, Seven Marine argues, Santos would "undoubtedly be excluded by the Court's gatekeeping function" if he were to be presented as an expert witness today. *Id.* at 3.

Movants say that Black Gold/Ducharme apparently intend to have Santos and Keifer attend the August 22-23, 2022 third inspection of the engines and then issue new reports. For Keifer, it would be his first report. For Santos, it would be his first *final* report.

If this were to be permitted, Seven Marine predicts, the other parties would then be required to review the new reports and have their respective experts respond in their

own new rebuttal reports. After that, the parties would need to schedule depositions for *all* the experts, which would then trigger another round of *Daubert* challenges (with motions, responses and replies). Thus, Seven Marine contends, "there is simply not enough time" to complete these tasks, which is why expert disclosures were required in April 2022 and why all expert discovery was to be completed by June 2022.

Thus, Seven Marine contends that it (and other parties) would be severely and unfairly prejudiced if Santos were allowed to issue an additional report with final conclusions and if Keifer were allowed to issue his first report.

In their opposition response, Black Gold/Ducharme (1) highlight the logistical difficulties associated with international inspections of the Vessel; (2) explain that the experts involved in the second inspection (in mid-May 2022) agreed to transport the entire Vessel's transom back to the United States for further lab testing, including metallurgical testing; (3) note that the parties have agreed to a further inspection of the Vessel on August 22-23, 2022; (4) point out that all parties have not issued a final expert report because of the upcoming agreed additional lab examination; (5) argue that striking their experts would be unduly harsh and prejudicial; (6) claim that Santos will issue a final report (to supplement his three "preliminary" reports) after the inspections are complete; and (7) admit that Keifer's disclosure was after expiration of the expert disclosure deadline but say it was "made in a reasonable amount of time after the parties agreed on metallurgy testing." [ECF No. 217, p. 3].

8

Seven Marine's reply notes that both procedural grounds and substantive *Daubert* grounds require the exclusion of the two experts. [ECF No. 225]. It cites cases in which federal courts exclude expert reports which are preliminary or require further revision and analysis.

<u>Underwriters' Motion to Strike Santos and Keifer (and the Relevant Contentions)</u>

Underwriters' motion focuses on the preliminary nature of Santos' reports, his failure to appear for deposition, the late disclosure of Keifer (an expert in metallurgy, which Black Gold/Ducharme had not earlier indicated would be a subject of expert opinion testimony from its expert) and Keifer's failure to provide any report. [ECF No. 205]. It acknowledges that its own metallurgist, Dennis McGarry, had not submitted an expert report either (because he had not done any testing) but unequivocally advised that it is prepared to try its unseaworthiness claim without him. In other words, Underwriters agrees that McGarry should be excluded if Keifer is excluded. *Id.* at 8 n.4.

Underwriters explains that it began asking for a deposition of Santos shortly after the first disclosure of his (preliminary) report. It notes that it made the deposition request on May 16, May 19, May 24, June 2, and June 9, 2022 but never received a response before (or after) the June 24, 2022 expiration of the discovery deadline. It emphasizes that a party cannot disclose its experts and seek to have them offer opinion testimony at trial while refusing to make them available for a deposition until after the discovery deadline expired.

Concerning Keifer, it highlights that Black Gold's deadline to disclose experts was April 22 and the discovery deadline was June 24 – but Keifer was disclosed on July 1. And, because Black Gold/Ducharme retained him to provide expert testimony in the case, he needed to issue a report containing certain information. No report of any kind was provided, however.

In their opposition response, Black Gold/Ducharme says the motion to strike is unreasonable "given the posture of the case." [ECF No. 216]. They highlight the difficulties in trying to coordinate inspections in another country during COVID-19 and say that the Court "recognizes the complexities of this case." *Id.* They argue that striking the two experts would be "a harsh outcome and highly prejudicial" to their case. *Id.* They say they never provided a date for Santos' deposition because "a deposition of Santos without the ability to complete the full investigation is futile and a complete waste of resources." *Id.*

Black Gold/Ducharme argue that their failures are substantially justified because "the investigations has [sic] not been complete" and that "no technical expert has been deposed in this case for that reason." *Id.* They also contend that "Underwriters have **zero** prejudice relating to Keifer, and Keifer will be available for deposition after the August inspection." *Id.* at 5 (emphasis added).

Finally, Black Gold/Ducharme mention, in the final paragraph of their memorandum, starting with the word "Wherefore," that it is asking the Court to enter an

10

Order extending the current trial order by 30 days "should the Court feel that the time between the August 22-23 inspection and the trail [sic] period is insufficient to conduct the necessary expert deadlines [sic]." *Id.* at 6.

Underwriters' reply memorandum notes that Black Gold/Ducharme has known since January 2020 that Underwriters intended to conduct metallurgical testing. [ECF No. 223]. Therefore, it says, "it is incomprehensible that Black Gold could not have reasonably anticipated the need to retain a metallurgist until July of 2022." *Id.* at 2. It also points out that Black Gold/Ducharme claim that Santos' testimony is "essential" but do not address Keifer's testimony, which Underwriters suggests is because they do not know what he will say. Likewise, Underwriters notes that Black Gold/Ducharme have not made clear "what type of testing Keifer wants or needs to accomplish to render an opinion." *Id.* at 4 n.3.

According to Underwriters, if Santos' opinions were not complete, then he was not properly disclosed as an expert. Underwriters also notes that Black Gold signed on to a motion which did not contemplate a second inspection (let alone mention a third) and requested (on February 25, 2022) "one final extension" of pre-trial deadlines.

When the Court issued an amended trial scheduling order on March 16, 2022, it expressly noted, in the very first paragraph, that it was the "final" order resetting the pretrial deadlines. [ECF No. 197]. To emphasize that point, the Court then noted, in bold font, that "**none of these deadlines will be extended absent a**

**compelling showing that the Parties are unable to comply with these deadlines."** *Id.*
Underwriters argues that Black Gold/Ducharme have not made the requisite compelling
showing to justify an Order permitting Santos and Keifer to testify.

As argued by Underwriters, it "complied with court-imposed deadlines, Black
Gold did not, and changing the rules mid-game effectively punishes Underwriters for
following the rules." [ECF No. 223, p. 3].

Underwriters argues that Black Gold/Ducharme "attempt to sneak into its
Response" a request for yet another extension of the trial scheduling order and notes that
"a request for relief must be raised by motion." *Id.* at 3 n.2. Furthermore, Underwriters
also notes, as a practical matter, that a 30-day extension would not help because the
current discovery deadline of June 24, 2022 expired more than 30 days before the buried
request.

Arguing that Black Gold/Ducharme seem to be operating under the philosophy
that "it's better to beg for forgiveness than to ask for permission," Underwriters notes
that the deadlines have already been extended five times and the discovery "must
eventually come to an end, even in the age of COVID." *Id.* at 7.

<u>Applicable Legal Standards and Analysis</u>

Underwriters' reply memorandum emphasizes that the last three orders extending
the deadlines, dating back to May of 2021, "came with dire warnings." Specifically, the
Order at ECF No. 157 said "[t]hese deadlines will not be extended absent extraordinary

circumstances." The next Order [ECF No. 175] said "[t]he parties are forewarned that failure to abide by this scheduling order will lead to dismissal of the action without prejudice." And the final Order [ECF No. 197] (discussed *supra*) said that "[n]one of these deadlines will be extended absent a compelling showing that the Parties are unable to comply with these deadlines."

Federal Rule of Civil Procedure 26(a)(2)(B) provides that "[a] party must make [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(a)(2)(B) specifically requires that the written report which an expert must sign to include several types of information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

However, if a party fails to provide information or identify a witness as required by Federal Rule of Civil Procedure 26(a) (i.e., failure to timely disclose or supplement), then the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Cooley v. Great Southern Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) ("Parties who fail to satisfy these disclosure and supplementation

13

requirements are prohibited, pursuant to Fed. R. Civ. P. 37(c)(1), from using the undisclosed evidence 'at trial, at a hearing, or on a motion,' unless the failure is harmless.").

Exclusion is "automatic" if it was without substantial justification. *See* Fed. R. Civ. P. 37(c) advisory committee's note. "Substantial justification is justification to a degree that could satisfy a reasonable person that the parties could differ as to whether the party was required to comply with the disclosure request." *Hewitt v. Liberty Mut. Group, Inc.,* 268 F.R.D. 681, 682 (M.D. Fla. 2010). Additionally, the burden is on the party seeking to introduce the evidence to prove harmlessness. *R.C. Olmstead, Inc. v. CU Interface, LLC,* 606 F.3d 262, 272 (6th Cir. 2010).

The Eleventh Circuit has instructed district courts to review three factors when deciding whether to exclude the testimony of witnesses who are untimely disclosed: "(1) the importance of the testimony; (2) the reason for the [party's] failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness [is] allowed to testify." *Pete's Towing Co. v. City of Tampa, Fla.,* 378 F. App'x 917, 920 (11th Cir. 2010).

Prejudice occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the witness in question. *See Mitchell v. Ford Motor Co.,* 318 F. App'x 821 (11th Cir. 2009) (affirming order striking expert testimony because late disclosure of the scientific basis of an expert's opinion deprived defendant of meaningful opportunity to depose him on the subject); *Alvarado v. United*

*States*, No. 10-cv-22788, 2011 WL 1769097, at *1 (S.D. Fla. May 4, 2011) (granting motion to strike untimely disclosed trial witness because defendant had no meaningful opportunity to take deposition of witness, a scenario which "will potentially result in prejudice").

Courts routinely strike expert reports or exclude expert testimony, which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense. *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-23074, 2014 WL 3764126 (S.D. Fla. July 30, 2014) (citing *Santiago Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272, 277-78 (1st Cir. 2006) (affirming preclusion even though the result was to exclude evidence critical to plaintiff's claim)); *see also generally, Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1348-49 (11th Cir. 2004) (affirming order excluding untimely expert report).

The striking of an untimely disclosed expert witness can be an appropriate sanction for failing to comply with expert witness disclosure requirements, and a court has broad discretion in deciding whether to impose such a sanction. *Delvista Towers*, 2014 WL 3764126, at *2.

Framed by these rules, and aware of the Court's broad discretion in deciding whether to exclude an expert witness, the Undersigned will now discuss the three factors.

The Undersigned recognizes that Black Gold/Ducharme say that the testimony is important to their ability to prove their claim. However, they have not pinpointed exactly what the two experts will say for their final opinions, as Santos has not yet offered his

final opinion (and has not participated in the final inspection or testing) and Keifer has not given any indication about what his final opinions will be after inspection and testing. At most, the Court can assume that his opinions will be in the general field of metallurgy. But, as Underwriters notes, it is far from clear what type of testing Keifer wants or needs for his not-yet-formulated opinions.

As pointed out by Underwriters, the importance of the opinion testimony from Black Gold's two experts counts *against* Black Gold, not for it. *Poole v. Carnival Corp.*, No. 14-20237-Civ, 2015 WL 1566415, at *6 (S.D. Fla. Apr. 8, 2015) ("[The] [p]laintiff, as the proponent of the expert, should have known the importance of compliance with Rule 26.").

Moving to the next factor -- Black Gold's explanation for its failure to comply with the expert disclosure deadlines -- it blames the COVID-19 pandemic for the initial delays and then says that both experts cannot provide final opinions until after the third inspection (and later testing). But Underwriters has pinpointed reasons why Black Gold played a role in the delay in obtaining meaningful inspections. Black Gold could have requested assistance in bringing parts back to the United States after the first inspection, for instance, and it could have timely sought to extend deadlines once it became clear that its experts would still not be able to provide final opinions because the additional inspection had not occurred.

The pandemic has been a challenge to all litigants, of course, but other parties in

other cases manage to meet adjusted deadlines or they risk the consequences of not following the trial scheduling order. *See Diamond Resorts Int'l, Inc. v. US Consumer Att'ys, P.A.*, No. 18-80311-CIV-REINHART, 2021 WL 4482833, at *5 (S.D. Fla. May 31, 2021) (denying an eleventh-hour extension for additional discovery after having granted multiple COVID-related discovery extensions, noting that "[the] [p]laintiffs have had ample chances to obtain the discovery they now seek" and stating, "[a]ll good things must eventually come to an end. That includes this case.").

This Order has already outlined the myriad problems which would inevitably arise if Black Gold/Ducharme were to be allowed to add final opinion testimony from Santos and new opinion testimony from Keifer after the disclosure and discovery deadlines have expired. For all practical purposes, there is simply not enough time to complete all the projects which would inevitably arise, such as (a) rebuttal expert reports, (b) depositions of experts concerning the test results, inspection and new or rebuttal expert opinions; and (c) new *Daubert* attacks on all the new and/or revised expert opinions.

Permitting Black Gold to substantially change its presentation by using not-yet-disclosed expert opinion testimony would generate substantial prejudice to Underwriters and the other parties. *See Hartford Steam Boiler Inspection & Ins. Co. v. Menada, Inc.*, No. 1:17-cv-21465, 2018 WL 3911212, at *4-5 (S.D. Fla. Apr. 4, 2018) (precluding an expert from testifying where the defendant's failure to disclose an expert until after the discovery

cutoff "robbed [the plaintiff] of the opportunity to adequately prepare its case with regard to the matters within [the expert's] knowledge"); *Longhini v. W. 97 Corp.*, No. 1:15-cv-22874-UU, 2016 WL 3671870, at *3-4 (S.D. Fla. July 11, 2016) (striking expert and explaining that Rule 26 is designed to allow parties to "prepare their case adequately and to prevent surprise"); *see generally Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-cv-23134, 2020 WL 5946473 (S.D. Fla. Oct. 7, 2020) (granting motions to strike and exclude expert witnesses for disclosure violations).

Although Seven Marine terms its motion a *Daubert* challenge, it is based on many of the same circumstances as those raised (successfully) by Underwriters.

Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (*en banc*). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306

(11th Cir. 1999).

Here, Black Gold/Ducharme have not yet met their burden, and the current circumstances guarantee that they will not now be able to clear the necessary hurdles. First, it is impossible for them to demonstrate that Keifer's opinions are reliable -- because he has not disclosed any and therefore has not even submitted a report. *Columna, Inc. v. UnitedHealth Ins. Co.*, No. 9:18-cv-81737, 2020 WL 624120, at *2 (S.D. Fla. Feb. 11, 2020) ("Exclusion [of expert witnesses] is also an appropriate remedy under Fed. R. Civ. P. 16(b), which authorizes the court to control and expedite pretrial discovery through a scheduling order and gives the court broad discretion to preserve the integrity and purpose of a pretrial order, including the exclusion of evidence.").

Likewise, they cannot meet their burden for Santos now because his current opinions are merely preliminary. *Acosta v. Electrolux North America*, No. 08-60213-CIV, 2008 WL 5246160, at *5 (S.D. Fla. Dec. 16, 2018) ("[A] 'preliminary report' does not suffice under Rule 26."); *Hallmark Dev., Inc. v. Fulton Cnty., Ga.*, No. 1:02-cv-01862-ODE, 2004 WL 5492706, at *6 (N.D. Ga. Sept. 27, 2004) (noting that Rule 26 requirements were not satisfied where expert reports required "further revision and analysis").

## Conclusion

The Undersigned finds both motions persuasive and grants each of them. The ship capsized more than three years ago, the discovery deadlines have been extended numerous times and the Court has repeatedly warned all parties that no further

enlargements would be provided without compelling circumstances.

Discovery, including expert witness discovery, has ended. It is time for the parties to pursue final trial preparation.

Regardless of whether Santos and Keifer are excluded from offering expert opinion testimony at trial because of the grounds articulated in Underwriters' motion or in Seven Seas' motion or both, the relief is identical: they are foreclosed from presenting expert opinion testimony at trial. And, for the same reasons, McGarry is subject to the identical prohibition.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 18, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record