UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-23586-CIV-COOKE/GOODMAN

CERTAIN UNDERWRITERS
AT LLOYD'S OF LONDON
Plaintiff,
vs.
BLACK GOLD MARINE, INC.,
Defendant.
_____/
BLACK GOLD MARINE, INC.,
Defendant/Counter-Plaintiff,
vs.
CERTAIN UNDERWRITERS
AT LLOYD'S OF LONDON
Plaintiff/Counter-Defendant.
_____/
BLACK GOLD MARINE, INC., and Blake
Ducharme, individually
Third Party Plaintiffs,
vs.
MIDNIGHT EXPRESS POWER BOATS, INC.,
SEVEN MARINE, LLC, LATHAM
MARINE, INC.
Third Party Defendants.
_____/

**ORDER ON JOINT MOTIONS *IN LIMINE***

This Order addresses Underwriters' four motions *in limine* and Midnight Express Inc.'s ("Midnight") one motion *in limine*, which were filed as a joint submission containing the motion and response(s) in a single submission. [ECF No. 253]. United States District Judge Kathleen M. Williams, acting for United States District Judge Marcia

G. Cooke, referred the Motion to the Undersigned. [ECF No. 254].

Before turning to the individual motions *in limine*, the Undersigned addresses a common argument raised in multiple responses: motions *in limine* are disfavored during bench trials. Underwriters and Black Gold Marine, Inc. ("Black Gold") both argue that various motions should be denied based on this principle because the first-party claims are being tried to the bench and certain evidence is relevant to only the first-party claims.

Although it is accurate that the first-party claims are being tried to the bench, Judge Williams has ordered that "[t]he entire matter will be addressed in one trial, to begin on October 24, 2022.[1] The trial will be conducted with an advisory jury as to any matters tried before the bench." [ECF No. 222 (footnote added)]. Thus, a jury will hear all of the evidence. Because the Court will be using an advisory jury, the usual rationale disfavoring motions *in limine* -- that the Court is well equipped to remove from its consideration impermissible evidence -- is less persuasive. Accordingly, the Undersigned rejects this argument as a basis to deny any of the parties' motions *in limine*.

1. <u>Midnight's Motion to Preclude Expert Testimony by David Pliske</u>

David Pliske has not been disclosed by any party as an expert witness under Rule 26(a)(2)(B) or Rule 26(a)(2)(C). Midnight describes Mr. Pliske as "a marine surveyor who conducted two pre loss surveys of the subject vessel." Although Midnight agrees that Mr.

---

[1] In a subsequent Order, the District Court continued the trial to December 19, 2022. [ECF No. 245].

Pliske can testify to his factual observations, it argues that he should not be permitted to "present testimony as to unseaworthiness, merchantability, design or manufacturing defect or causation and must be precluded from offering evidence based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Underwriters' merit-based response avers that Midnight's request should be denied because Mr. Pliske's testimony is not being offered for its truth; rather, Underwriters "intend[s] to show [] that Mr. Pliske, a qualified marine surveyor, had made observations about the Vessel and had drawn conclusions based on those observations . . . . Whether those conclusions were ultimately correct or not (and Peter Gimpel, Underwriters' seaworthiness expert, has generally opined that they were), *uberrimae fidei* dictates that Underwriters had a right to know that a qualified marine surveyor had serious concerns regarding the safety and build quality of the vessel." For the reasons explained below, the Undersigned considers this argument unpersuasive.

Underwriters presents no authority which supports the proposition that a lay witness may offer expert testimony when the testimony is not being offered for its truth. Instead, Underwriters' legal authority concerns only the relevance of evidence which might establish a potential insured's knowledge of a material fact which must be disclosed to a potential insurer. At bottom, Rule 26 requires litigants to properly disclose witnesses who seek to provide expert testimony. Because Mr. Pliske was not properly disclosed as an expert, he may not present testimony which would be outside the

3

knowledge of a layperson. *United States v. Hill*, 643 F.3d 807, 840–41 (11th Cir. 2011) ("[A] lay witness may offer opinions that are: '(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) *not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.*'" (quoting Fed. R. Evid. 701) (emphasis supplied)).

For these reasons, the Undersigned grants Midnight's motion, and Mr. Pliske is prohibited from offering any expert testimony.

> 2. Underwriters' Motion to Preclude Testimony from Drew Hains in the First-Party Case

Underwriters anticipates that Black Gold or Midnight will attempt to have Drew Hains testify in the first-party case, which it contends is impermissible because nobody has disclosed Drew Hains as an expert in the first-party case. In support of its request, Underwriters cites only to Rule 26(a)(2)(A) and cases which discuss generally witness disclosure requirements.

Black Gold and Midnight both oppose Underwriters' request. The arguments they raise are similar: (1) there is one scheduled trial; and (2) there is no prejudice to Underwriters. Midnight notes that Mr. Hains was properly disclosed as an expert in the third-party case, gave a deposition, and Underwriters' expert, Mr. Gimpel, authored a rebuttal report which addressed Mr. Hains' opinions. Likewise, Black Gold highlights that many of the facts -- such as the condition of the vessel -- overlap between the first-party and third-party claims, and the parties are aware of all the witnesses.

Moreover, as Black Gold notes, although the claims are being tried together, the Court will have the final say in the first-party case and "can sort this out, and not be confused or prejudiced." Because the first-party and third-party claims are being tried together, and Underwriters has taken Mr. Hains' deposition and had its own expert prepare a rebuttal report, there is no prejudice to Underwriters. The Undersigned therefore **denies** the motion.

3. Underwriters' Motion to Preclude Midnight's Involvement in the First-Party Case

Underwriters seeks to prohibit Midnight from cross-examining witnesses whose testimony it believes is relevant to only the first-party case, which does not involve Midnight. It says that allowing such cross-examination would permit Midnight to "insert itself into an issue in which it has no interest . . . [and] would only invite jury confusion." Underwriters then repeats its preference that these claims be tried separately.

Midnight agrees with Underwriters' belief that these claims should be tried separately but says that as long as the claims are being tried together, it has a right to question any witnesses called during the case.

Under the District Court's Scheduling Order, these claims are being tried simultaneously. [ECF No. 222]. The Undersigned is aware of no authority -- nor has Underwriters cited any pertinent authority -- which would permit the Court to prohibit a litigant from questioning a witness. For these reasons, the Undersigned **denies** Underwriters' motion.

4. <u>Underwriters' Motion to Preclude Fact Testimony of Rolando Santos</u>

Black Gold retained Rolando Santos to offer expert testimony concerning the vessel. The Court previously granted Underwriters' request to exclude Mr. Santos as an expert witness. [ECF Nos. 230; 246; 257]. Underwriters now seeks to prohibit Black Gold from presenting Mr. Santos as a *lay* witness. In support of its request, Underwriters claims it was prejudiced because Black Gold refused to produce Mr. Santos for a deposition. It further argues that it is fearful Black Gold will seek to introduce excluded expert testimony through the back door with the testimony of Mr. Santos, who learned things relevant to this case only during the course of his retention as an expert.

Black Gold understands that Mr. Santos "cannot issue expert opinions" but argues that "he can authenticate photos, documents, [and] testify to facts and observations[,] as opposed to giving expert testimony." In Black Gold's view, there is no prejudice because Mr. Santos has been listed as a witness for well over a year and Underwriters has his reports.

Mr. Santos may not offer expert testimony. The Undersigned, however, is not fully persuaded by Underwriters' prejudice argument given, in part, its ability to effectively argue Mr. Santos' exclusion as an expert witness. Nonetheless, Black Gold shall make Mr. Santos available to Underwriters for a deposition as a fact-witness. Underwriters shall have until October 21, 2022 to take Mr. Santos' deposition. If Underwriters elects to take Mr. Santos' deposition and Black Gold does not make Mr. Santos available by the October

21, 2022 deadline, then Mr. Santos will not be permitted to testify in any capacity. The Undersigned **denies** in all other respects Underwriters' motion.

    5.   <u>Underwriters' Motion to Preclude Expert Testimony by Engineering Parties</u>

Underwriters seeks to prevent Harris Glaser, Eric Glaser, or unnamed corporate representatives of Latham Marine and Seven Marine from offering expert opinions because these witnesses have not been listed as experts. Underwriters notes that Harris Glaser is expected to testify to "the design, building repairs and handling of repairs on the vessel" and the corporate representatives are expected to testify as to "the systems on the tender and repairs." Underwriters argues that, although these individuals may testify as to their observations, they should not be permitted to testify as to whether the vessel was seaworthy.

Midnight argues that Underwriters' motion should be denied because the Glasers are "owners of the business" and "testimony as to their business product is not expert testimony and is permissible lay testimony." Midnight cites *Mortg. Now, Inc. v. Stone*, No. 3:09CV80/MCR/MD, 2010 WL 11519632, at *2 (N.D. Fla. Sept. 29, 2010) for the proposition that:

> In *Tampa Bay Shipbuilding*, 320 F.3d at 1222, the Eleventh Circuit held that testimony by business owners and officers relating to "the particularized knowledge that the witness has by virtue of his or her position in the business" is not expert testimony under Rules 701 and 702" The Court went on to state that "the Committee notes of Rule 701 specifically discuss testimony by business owners or officers and explain that: [M]ost courts have permitted [owners and officers] to testify ... without the necessity of qualifying the witness as an ... expert. Such opinion testimony is admitted

> not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

[ECF No. 253] (some internal citations omitted).

However, through the purposeful and strategic use of an ellipsis, which omits critical language, Midnight substantially broadens the scope of the discussion, which states: [M]ost courts have permitted [owners and officers] to testify **to the value or projected profits of the business**, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *Mortg. Now, Inc.*, 2010 WL 11519632, at *2 (emphasis added).

Intentionally omitting the words "the value or projected profits of the business" dramatically broadens the holding of the case. By removing these key words, Midnight **makes it seem as though** the case is authority for the admissibility of an opinion from a vessel owner on vessel repairs or other marine industry issues. But that is not what the case says, and Midnight's purposeful removal of the language stretches the holding of the case. The Undersigned does not appreciate that type of tactic, which is clearly improper.

Midnight's lead counsel shall by October 13, 2022 file an affidavit on CM/ECF, explaining why he decided to remove the limiting language, whether he considers the practice acceptable, whether he understands that removing a few words removes the limiting language which impacts the holding, whether he typically cites cases in such

ways and whether he considers his citations with the altered quote to be misleading.

In any event, notwithstanding the questionable method of citation, business owners can certainly testify as to business issues on which they are familiar, such as profits, the norms used by the business or their business' procedure for obtaining insurance or determining the value of boats. Business owners, however, are not given *carte blanche* freedom to offer any testimony on *any* topic which might concern their business. Indeed, if this were true, then the owner of an engineering firm (who lacked engineering training and experience) would be permitted to testify about complex engineering principles based solely on his status as the business owner.

Black Gold's argument is only that Underwriters' motion is unnecessary and should be denied. It says that it listed these witnesses as fact witnesses and they can testify as to what was on the vessel and what they did. Black Gold says that it "understand[s] that they cannot issue expert opinions." Black Gold's belief that the motion is unnecessary -- despite Midnight's robust opposition on the merits -- is insufficient to justify denying the request.

The Undersigned **grants** Underwriters' motion; these witnesses may not present expert testimony. However, because Underwriters has not identified with any specificity the precise testimony which it believes crosses the line from a topic which the vessel owner can discuss to an impermissible expert-type opinion, the Undersigned will not issue specific limiting instructions to Midnight or Black Gold and will not now provide a

menu of permissible topics and a menu of off-limits topics. If any of these witnesses begin to offer expert testimony, then Underwriters may raise a contemporaneous trial objection.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on October 6, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record